**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ANYSHA M.,

                              Plaintiff,

v.                                                          3:19-CV-0271
                                                            (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                                **OF COUNSEL:**

LACHMAN & GORTON                    PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.         JAMES J. NAGELBERG, ESQ.
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION & ORDER</u>[1]

Currently before the Court, in this Social Security action filed by Anysha M.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 9, 13, 14, Attach. 1.)  For the reasons set forth below, Plaintiff's motion for

---

[1] Parties consented to a Magistrate Judge's jurisdiction of the full disposition of this case.  Dkt. Nos. 4, 6.

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I.      BACKGROUND

### A.      Facts

Plaintiff was born in 1989, making her 25 years old at the alleged onset date and 29 years old at the date of the ALJ's decision.  Plaintiff reported completing the ninth grade.  She has previous work as a hair stylist.  Plaintiff initially alleged disability due to scoliosis of the thoracic spine, levoscoliosis of the lumbar spine, bipolar disorder, borderline personality disorder, depression, and posttraumatic stress disorder.

### B.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on October 15, 2015, alleging disability beginning on December 31, 2014.  (T. 108-09, 187-96.) [2]  Plaintiff's applications were initially denied on April 15, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 97-115.)  She appeared at an administrative hearing before ALJ Jennifer Gale Smith on April 26, 2018.  (T. 48-80.)  On May 23, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-47.)  On January 8, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

---

[2]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### C.    ALJ's Decision

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.  (T. 16.)  Second, the ALJ noted that there "is significant work activity after the date first insured," but concluded that "the record does not clearly establish that the claimant has engaged in substantial gainful activity for more than a brief period."  (*Id.*)  Third, the ALJ found that Plaintiff's history of lower left extremity fracture and surgical repair, degenerative disc disease of the lumbar and cervical spine, lupus, fibromyalgia, bipolar disorder, posttraumatic stress disorder ("PTSD"), history of learning disorder, and substance abuse to be severe impairments. (T. 16-18.)  Fourth, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 18-20.)  In so doing, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 11.04 (vascular insult to the brain), 14.09 (inflammatory arthritis), and near listings for 1.00 (musculoskeletal conditions), 11.00 (neurological disorders) and 14.00 (impairments of the immune system) as well as Listings 12.02 (neurocognitive disorders), 12.04 (depression and related disorders), 12.05 (intellectual disorder), 12.06 (anxiety and related disorders), 12.08 (personality and impulse-control disorder), 12.11 (neurodevelopmental disorders) and 12.15 (trauma- and stressor-related disorders) and near listings under 12.00 for mental disorders.  (*Id.*)

Fifth, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with additional limitations.  (T. 20.)  The ALJ's RFC started that Plaintiff:

> should not climb ladders, ropes and scaffolds; should not balance, kneel, crouch, and crawl; can occasionally climb ramps, climb stairs, and stoop; can frequently reach; should not be required to push and pull; should be able to use a cane for ambulation; can work at simple, routine, and repetitive tasks; should work in a "low stress" job defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting; should work at goal-oriented work rather than production pace rate work; and should have occasional contact with co-workers, supervisors, and the public.

(T. 20-21.)  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 37-38.)  Seventh, the ALJ found that Plaintiff can perform other jobs existing in significant numbers in the national economy, and, thus, Plaintiff is not disabled.  (T. 38-41.)

### D.    Arguments

Plaintiff argues the ALJ failed to properly assess her fibromyalgia, including giving great weight to the opinion of consultative examiner John Fkiaras, M.D., which was submitted prior to the diagnosis of fibromyalgia, and that she erroneously weighed the opinions of Plaintiff's treating providers.  (Dkt. No. 9, at 12-22.)  Plaintiff also contends that the ALJ failed to properly assess her ability to stay on task and/or maintain attendance and that the Step Five determination is not supported by substantial evidence.  (*Id*. at 22-25.)

4

Defendant argues that the ALJ properly considered the lack of objective evidence supporting Plaintiff's fibromyalgia symptoms and limitations and afforded great weight to Dr. Fkiaras' opinion.  (Dkt. No. 13, at 4-14.)  Defendant next contends the ALJ was not required to afford controlling weight to the opinions of Plaintiff's treating providers despite the fibromyalgia diagnosis.  (*Id*. at 14-15.)  Defendant argues that the ALJ properly considered the opinion evidence regarding time off-task and absenteeism, and that Plaintiff has waived any challenge to the ALJ's hypothetical question to the vocational expert.  Finally, Defendant contends that the ALJ's Step Five analysis is supported by substantial evidence.  (*Id*. at 16-19.)

On reply, Plaintiff reiterates her arguments made in her brief, which will not be restated here. Plaintiff also asserts that the diagnosis of fibromyalgia could have reasonably changed Dr. Fkiaras' opinion "because it would explain, among other thing[s], the extent of Plaintiff's severe pain and other symptoms that contribute to her inability to work on a regular and continuing basis."  (*Id*.)  Plaintiff also argues the opinion from treating primary care provider Najib Azad, D.O., is consistent with the record evidence and Dr. Calkins' opinion and that this opinion "cannot be said to be inconsistent with Dr. Fkiaras' assessment of 'mild to moderate limitation' to standing and walking, which [] is too vague to constitute substantial support for the ALJ's RFC."  (*Id*. at 3.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]."

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court

must afford the Commissioner's determination considerable deference, and may not

substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health &*

*Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).


**B.      Disability Standard**

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§

404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential

evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).

The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there

7

> is other work which the claimant could perform.   Under the
> cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner]
> must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. DISCUSSION

### A. Fibromyalgia

Social Security Ruling ("SSR") 12-2p explains that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months."  2012 WL 3104869, at *2 (July 23, 2012).  When determining an RFC based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence -- or lack thereof -- related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record.  *See Campbell v. Colvin*, 13-CV-0451 (GLS/ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (citing SSR 12-2p, 2012 WL 3104869, at *3).  "A 'mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability,' but denying a fibromyalgia-claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error." *Campbell*, 2015 WL 73763, at *6 (citing *Grenier v. Colvin*, 13-CV-0484 (GLS), 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014)).

8

Plaintiff argues that the ALJ failed to assess her fibromyalgia properly because "there is no meaningful discussion of [fibromyalgia] or its impact on her ability to work in forming the RFC or weighing the medical opinion evidence."  (Dkt. No. 9, at 12-22.) Plaintiff also contends that the ALJ required Plaintiff to prove more than is legally required and focused on a lack of chronic positive objective clinical findings.  (*Id*. at 13-14.)  The Court is not persuaded by these arguments.

First, the ALJ found fibromyalgia to be a severe impairment and, within the severity finding, noted SSR 12-2p.  (T. 16.)  The ALJ further considered Plaintiff's various severe impairments, including her fibromyalgia and medical treatment in detail when determining her RFC and weighing the evidence of record.  (T. 16-37.)  Indeed, the ALJ explained that the medically-determinable impairments fully accounted for the alternate diagnoses or notations from elsewhere in the record.  (T. 16.)  Examples of such alternate diagnoses or notations which might have also accounted for Plaintiff's alleged fibromyalgia and related symptoms -- particularly widespread pain -- include residuals from a remote motor vehicle accident, back injury, low back pain with sciatica, lumbar facet arthropathy, strain of lumbar paraspinous muscle, strain of mid-back, scoliosis, levoscoliosis of the lumbar spine, acquired torticollis, discogenic back disorder, degeneration of intervertebral disc of lumbar region, degenerative disc disease of thoracic spine, history of closed treatment of clavicular fracture, spinal fracture, arthritis, osteoporosis, cervical myofascial strain, cervical radiculopathy, bilateral shoulder pain, bursitis of left shoulder, tarsal tunnel syndrome, damage to left wrist in 2003, history of treatment for lower leg fracture, bilateral foot pain, bilateral plantar

9

fasciitis, chronic fatigue syndrome, myalgias, and arthralgias.  (T. 16-17.)  This portion of the ALJ's discussion indicates that the ALJ was aware of the various impairments which could cause Plaintiff's widespread pain, including fibromyalgia, and that she sought to account for them properly in the severity determination.  (T. 16.)

Second, the ALJ noted that she specifically considered Listings 14.09 for inflammatory arthritis and 14.00 for impairments of the immune system when assessing whether Plaintiff had an impairment or combination of impairments which met or medically equaled a listed impairment.  (T. 18.)  SSR 12-2p explains that fibromyalgia cannot meet a listing because it is not a listed impairment, but the Agency determines whether fibromyalgia medically equals a listing or medically equals a listing in combination with at least one other medically-determinable impairment at Step Three and references Listing 14.09D for inflammatory arthritis as an example.  2012 WL 3104869, at *6.  Further, in considering Plaintiff's impairments in conjunction with the listings, the ALJ noted that although Plaintiff has been treated for widespread pain since the date first insured, the record did not reveal signs, symptoms and laboratory findings equivalent to an established listing.  (T. 18.)  The ALJ also concluded that Plaintiff's impairments, including fibromyalgia, lupus, and cervical spine disorder, did not result in sustained disturbance of gross and dexterous movements or the inability to perform fine and gross manipulation effectively.  (T. 19.)  The ALJ's detailed explanation of her consideration of the Listings indicates that she properly considered Plaintiff's fibromyalgia and other severe impairments at this step in the sequential evaluation.  (T. 16.)

Third, the ALJ discussed Plaintiff's alleged chronic pain in her back and neck at length throughout her consideration of Plaintiff's physical RFC.  (T. 21-31.)  For example, the ALJ noted Plaintiff's overall positive response to conservative treatment for her left lower extremity, spine disorders, fibromyalgia, and lupus failed to support greater exertional and non-exertional limitations.  (T. 21.)  The ALJ also indicated formal mental health treatment might provide some ancillary benefit to fibromyalgia or chronic pain symptoms, but the focus of mental health treatment was Plaintiff's psychological symptoms.  (T. 22.)  The ALJ noted Plaintiff's reports of 10 out of 10 pain, emergency department visits between July 2016 and November 2016 for uncontrolled symptoms such as pain and muscle spasms, as well as pain management and other treatment for pain.  (T. 22, 267-68, 343-44, 433, 548, 551608-17, 740, 742.)  In discussing the evidence of record, the ALJ also noted that Plaintiff generally presented with more subjective findings for tenderness and decreased range of motion of her spine and hips and few exams showed active muscle spasms, trigger points/tender points of the spine or extremities, or positive fibromyalgia test.  (T. 25-26.)  The ALJ also considered medical opinions as to limitations caused by Plaintiff's pain, including that of Plaintiff's treating pain management specialist, therapist, and other treating providers.  (T. 26-31, 499-508, 583, 585-91, 728-29, 802, 812, 837, 855, 883, 889.)  The ALJ's references to fibromyalgia and chronic widespread pain throughout her RFC analysis indicate that she properly considered Plaintiff's fibromyalgia in determining Plaintiff's physical limitations that are supported by the evidence of record.  (T. 21-31.)

Fourth, it is of note that the ALJ found both fibromyalgia and lupus to be severe impairments and appears to have considered them in conjunction despite Plaintiff's indication that fibromyalgia was a misdiagnosis.  (T. 16, 21, 55, 57-58, 820, 890.)  The ALJ noted Plaintiff's testimony that she had been misdiagnosed with fibromyalgia until receiving a recent diagnosis of lupus.  (T. 25, 55, 57-58.)  Treatment notes from March and April 2018 indicate that Plaintiff did not believe fibromyalgia was the correct diagnosis and that she was frustrated and angry at having been diagnosed with fibromyalgia as she was more recently diagnosed with lupus.  (T. 820, 890, 892.)  The ALJ's inclusion of lupus in her severity finding and subsequent consideration of both lupus and fibromyalgia indicates that, throughout her decision, the ALJ assessed various causes for Plaintiff's alleged chronic widespread pain -- including fibromyalgia. (T. 16, 21-31.)

Finally, the Court is not convinced that the ALJ improperly focused on a lack of chronic positive objective clinical findings in considering Plaintiff's fibromyalgia and other impairments.  (Dkt. No. 9, at 13-14.)  As Defendant points out, the ALJ found Plaintiff's fibromyalgia to be severe and also "looked to objective evidence when evaluating her other severe physical impairments" as well as "factors beyond objective testing in evaluating Plaintiff's fibromyalgia symptoms and limitations, such as her activities, work history during the relevant period, positive responses to conservative treatment, subjective reports of no pain at times, and failure to take prescribed medication."  (Dkt. No. 13, at 6-8; T. 19, 21-22, 24-25, 55-57, 69, 201-11, 217, 219-20, 267-68, 343-44, 360, 362-63, 373-73, 382, 385, 389-90, 433-34, 437, 439, 441, 467,

531, 533, 542, 547-48, 552-55, 557, 567, 573, 575, 592, 597, 609, 611-12, 654, 721, 740, 749, 771-75, 780, 803, 806, 810, 820, 832, 836, 860, 862, 876, 894, 899, 901-03.) Further, as SSR 12-2p explains, objective evidence is needed to establish the presence of a medically-determinable impairment and, in the case of fibromyalgia, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." 2012 WL 3104869, at *3. Rather than improperly focusing on positive objective findings to discount Plaintiff's allegations of fibromyalgia and related symptoms, the ALJ's decision indicates a careful consideration of Plaintiff's multiple severe impairments along with the various medical opinions and other evidence of record to determine Plaintiff's supported physical and mental limitations. (T. 21-37.) Therefore, the Court finds that the ALJ did not rely solely on a lack of objective evidence related to fibromyalgia in finding Plaintiff's allegations of disabling pain were not fully supported by the record. *See Campbell*, 2015 WL 73763, at *5.

For the reasons above, the Court is not persuaded by Plaintiff's arguments that the ALJ's decision lacks a meaningful discussion of fibromyalgia or requires Plaintiff to prove more than is legally required. (Dkt. No. 9, at 12-22.) The Court finds that the ALJ properly considered Plaintiff's fibromyalgia and other impairments in making her various findings and that her analysis is supported by substantial evidence. Thus, remand not required on this basis.

## B. Opinion Evidence and RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."   A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).   "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d

14

409, 418 (2d Cir. 2013).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing *Halloran,* 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In *Estrella v. Berryhill*, the Second Circuit has more recently addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assessing the weight to accord to a treating physician's opinion.  925 F.3d 90 (2d Cir. 2019).  In *Estrella*, the Court explained that such failure is a procedural error and remand may be appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'"  925 F.3d at 96 (alteration in original) (quoting *Halloran*, 362 F.3d at 32).  The Court further clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm."  *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).  The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion."  *Id*.

15

In *Estrella*, the Second Circuit concluded that the record did not otherwise provide good reasons for the weight afforded to the treating physician's opinion and pointed to "a number of treatment notes not cited by the ALJ reflect[ing] a more serious impairment than the ALJ acknowledged[,]" the plaintiff's Global Assessment of Functioning ("GAF") scores, and the opinion of a one-time consultative psychologist, all of which the Court concluded did "not provide good reasons for assigning little weight to [the treating psychiatrist's] opinion."  925 F.3d at 96-98.  Finally, the Court indicated that "the ALJ's two cherry-picked treatment notes [did] provide 'good reasons' for minimalizing [the treating psychiatrist's] opinion[,]" and noted that "[t]he ALJ made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in the plaintiff's mental health—one of the motivations beyond *Burgess*'s procedural requirement of explicit consideration of 'the frequen[cy], length, nature, and extent of [a physician's] treatment.'"  *Id*. at 97 (quoting *Selian*, 708 F.3d at 418-19).  The Court chose to remand the *Estrella* case "[i]n light of the ALJ's failure to 'explicitly consider' the first *Burgess* factor before assigning 'little weight' to the opinion of Estrella's treating psychiatrist, and the lack of 'other good reasons' to support that decision" and concluded "that the ALJ traversed the substance of the treating physician rule."  *Id*. at 98.

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, indicating that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians and did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those

16

physicians.  __ F. Appx___, 2020 WL 1189399, at *2-3 (2d Cir. Mar. 12, 2020).   The

ALJ concluded that a searching review of the record did not assure the Court that the

substance of the treating physician rule was not traversed.  *Id.*  The *Ferraro* Court also

indicated that "merely acknowledging the existence of treatment relationships is not the

same as explicitly considering 'the frequency, length, nature, and extent of treatment.'"

*Id.* at *2.


## 1. Medical Opinion Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'"

*Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016)

(quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)).  "The ALJ is

not permitted to substitute his own expertise or view of the medical proof for the treating

physician's opinion or for any competent medical opinion."  *Greek*, 802 F.3d at 375

(citing *Burgess*, 537 F.3d at 131).  In assessing a plaintiff's RFC, an ALJ is entitled to

rely on opinions from both examining and non-examining State agency medical

consultants because such consultants are qualified experts in the field of social security

disability.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012)

(summary order) ("The report of a State agency medical consultant constitutes expert

opinion evidence which can be given weight if supported by medical evidence in the

record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar.

26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical

issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In March 2016, Dr. Fkiaras conducted a consultative orthopedic examination, at which time Plaintiff reported being hit by a car at the age of six and having scoliosis since childhood.  (T. 433-38.)  Plaintiff indicated that physical therapy three times a week did not alleviate her back pain and oral medications provided mild relief.  (T. 433.) She denied doing any cooking, cleaning, laundry, or shopping and took part in childcare daily with assistance as well as showering, bathing, and dressing daily.  (T. 434.)  Upon examination, Plaintiff appeared to be in no acute distress; had a slow gait and normal station; was unable to walk on her heels and toes, could only squat one-third; used no assistive device; needed no help changing for the exam or getting on and off of the exam table; and was able to rise from a chair without difficulty.  (*Id*.)  Plaintiff had a limited range of motion in the thoracic and lumbar spine as well as the bilateral hips, but no spinal or paraspinal tenderness, sacroiliac joint or sciatic notch tenderness or spasm, scoliosis, kyphosis, or trigger points; and straight leg raise testing was negative bilaterally.  (T. 434-35.)  A lumbosacral X-ray was negative.  (T. 435, 437.)

Dr. Fkiaras diagnosed thoracic and lower back pain as well as history of scoliosis, being hit by a motor vehicle, left lower extremity fracture and surgical repair. (T. 435.)  He opined that Plaintiff should avoid any repetitive heavy lifting, carrying, pushing, pulling, squatting, kneeling, and crouching.  (*Id*.)  He also opined that Plaintiff had a moderate limitation in bending and mild-to-moderate limitations in walking and standing.  (*Id*.)

18

The ALJ afforded great weight to Dr. Fkiaras' opinion, noting that she did not adopt all of the limitations identified and that the opinion was generally supported by the objective medical evidence indicating that Plaintiff was "precluded from performing very heavy, heavy, medium, and light work activity due to the combination of physical impairments, but otherwise retains the maximum [RFC] to perform a range of sedentary activity."  (T. 25.)

In March and April 2017, physical therapist Laura Bozuhoski, PT, indicated that Plaintiff had functional deficits in sitting and standing, should avoid static prolonged positions, should change activity every 15-20 minutes, and was at risk for falls.  (T. 583, 728-29.)  The ALJ afforded little weight to these assessments, noting that they were based on only one to two examinations and were not fully supported by other scant chronically positive objective clinical findings.  (T. 27, 570, 583, 729.)  The ALJ also noted that significant limitations in sitting and the need to change positions frequently appeared to be based on Plaintiff's own statements, not objective clinical or laboratory findings.  (T. 27, 892.)

The ALJ afforded little weight to the medical opinions/assessments from Plaintiff's primary care providers Dr. Azad and Renee Pranovilla, RN, between October 2016 and October 2017, indicating that Plaintiff was incapable of working and unable to walk long distances, endorsing her use of a personal care attendant for up to 20 hours per week, or recommending the use of an assistive device when walking outdoors or longer distances such as a power scooter or mechanical wheelchair.  (T. 27-28, 499-508, 802, 808, 812, 837, 855, 883.)  The ALJ noted that the finding that Plaintiff is

disabled or unable to work is an issue reserved to the Commissioner.  (T. 27.)  Dr.
Azad's October 2017 opinion indicated that Plaintiff could occasionally lift and carry up
to 20 pounds, sit and stand for less than an hour at a time for a total of four hours each
per day, walk for one hour at a time for a total of one hour per day, occasionally
balance, never climb, stoop, crouch, kneel or crawl, frequently reach, handle and feel,
and occasionally push/pull.  (T. 499-502.)  Within that opinion, Dr. Azad also indicated
Plaintiff should avoid moderate exposure to noise and people and that her pain was
constantly severe enough to interfere with attention and concentration and quality sleep
and could produce fatigue.  (T. 503-04.)  Dr. Azad opined that Plaintiff was likely to be
off-task for a portion of the day due to her impairments (an average of 60-80 percent of
the day) and would be absent more than four days per month.  (T. 504.)

        The ALJ stated that the RFC reflected Dr. Azad's opinion that Plaintiff "has some
difficulty walking prolonged periods, but the remaining limitations are not consistent with
the scant findings noted on x-rays and MRI scans of [her] cervical spine, lumbar spine,
and knees."  (T. 27.)  The ALJ also indicated that greater postural, manipulative, and
environmental limitations and restrictions were not supported by the objective medical
evidence and other substantial evidence and significant absences and off-task behavior
were speculative given the fact that Plaintiff did not have a history of multiple cancelled
medical appointments with Dr. Azad.  (T. 27-30.)

        In November 2017, Plaintiff's therapist Patricia McLearn, LCSW, indicated that
Plaintiff had limited activities of daily living and at times had debilitating pain made
worse by exposure to weather, particularly cold weather.  (T. 889.)  The ALJ afforded

little weight to this assessment, stating that Ms. McLearn's treatment of Plaintiff was limited to her mental health disorders and there were few observations regarding uncontrolled pain noted in Ms. McLearn's progress notes to support her assessment. (T. 26.)  The ALJ also indicated that the "notations of difficulties performing activities of daily living were not based on personal observations of the claimant but based on the claimant's subjective self-reports of symptoms and functional limitations that are not well-supported[.]" (T. 26-27.)

In May 2018, treating pain management specialist Anne Calkins, M.D., certified that Plaintiff suffered from intractable pain with significant limitation to function and likely PTSD related to the death of her infant son.  (T. 889.)  The ALJ afforded partial weight to this opinion, indicating that it was not well-supported by the various examinations showing that Plaintiff did not appear to be in any acute distress as well as the lack of recurrent emergency department visits or inpatient hospitalizations.  (T. 26.)  The ALJ indicated that, nonetheless, the remainder of this medical opinion indicating that Plaintiff had some physical limits that would preclude her ability to perform very heavy, heavy, medium, and light work activity was otherwise well-supported by the record and entitled to partial weight.  (*Id.*)

The ALJ further stated that the assessments of Ms. McLearn, Ms. Bozuhoski, and Ms. Pranovilla could not be afforded controlling weight because they were not acceptable medical sources under the Federal regulations.  (T. 30.)  The ALJ also indicated that the medical opinions of Dr. Azad and Dr. Calkins could not be afforded controlling weight because they were "inconsistent with the scant chronically positive

objective clinical findings noted on repeat physical exams, including results of their own exams" as well as "other substantial evidence, including [Plaintiff's] various statements to her medical sources regarding her overall positive response to conservative treatment that fail to support her allegations regarding the duration, frequency, and intensity of pain and other physical symptoms." (*Id*.)  The ALJ indicated that Dr. Fkiaras' opinion was entitled to greater weight because it was more consistent with the record in its entirety including Plaintiff's "limited alternative treatment modalities to indicate uncontrolled symptoms and her engagement in physical activities on a regular and continuing basis consistent with a range of sedentary work." (*Id*.)

## 2.  Mental Health Opinion Evidence

In November 2015, then-treating psychiatrist Lyubov Gorelik, M.D. reached a global assessment of functioning ("GAF") score of 55 at Plaintiff's initial evaluation.  (T. 449.)  The ALJ afforded this score some weight in determining functional limitations related to Plaintiff's mental disorders, but not great weight.  (T. 32-33.)

In March 2016, Plaintiff underwent a consultative psychiatric examination conducted by Johanina McCormick, Ph.D., and reported participating in outpatient mental health treatment.  (T. 439-43.)  Plaintiff's overall presentation at the examination was adequate, and she had coherent and goal-directed thought processes, a depressed affect, a dysthymic mood, and clear sensorium.  (T. 440.)  She also had mildly impaired attention and concentration and impaired recent and remote memory skills due to distractibility.  (*Id*.)  Dr. McCormick diagnosed unspecified bipolar and related disorder

(provisional) and a specific learning disorder with impairment in math by history.  (T. 441.)

Dr. McCormick opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, make appropriate decisions and relate adequately with others, but that she had a mild impairment in maintaining attention and concentration, a moderate-to-marked impairment in maintaining a regular schedule and appropriately dealing with stress, and moderate impairment in learning new tasks and performing complex tasks independently with supervision.  (T. 441.)  Dr. McCormick concluded that the results of the examination appeared to be consistent with psychiatric problems, and that such problems may moderately-to-significantly interfere with Plaintiff's ability to function on a daily basis.  (*Id.*)  The ALJ did not adopt all of Dr. McCormick's findings, but indicated that she afforded this opinion great weight because it was "generally supported by the objective medical evidence from various medical sources, including records received at the hearing level."  (T. 31.)

At the initial determination level in April 2016, non-examining consultant G. Kleinerman opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration.  (T. 90, 101.)  Consultant Kleinerman stated that the psychiatric evidence was consistent with the judgments that Plaintiff retained the capacities for understanding, remembering, and carrying out at least non-complex instructions and for relating appropriately under conditions of reduced interpersonal contact.  (T. 93-95, 104-06.)

23

The ALJ afforded partial weight to this opinion, noting Consultant Kleinerman made his determination following a comprehensive review of the record, but that he did not have the benefit of conducting a mental status examination, the opinion predated the recent change in mental listings, and the opinion was based on limited medical evidence through April 2016 with somewhat greater limits supported by later-dated evidence received at the hearing level. (T. 33.) The ALJ indicated that, nonetheless, the finding that Plaintiff retained considerable mental capacity despite her multiple mental disorders was otherwise well-supported and entitled to partial weight. (*Id*.)

In May 2018, Dr. Calkins indicated that she did not believe Plaintiff's cannabis use contributed to her level of disability. (T. 889.) The ALJ afforded partial weight to this assessment, noting that Dr. Calkins did not otherwise provide a function-by-function assessment of Plaintiff's mental functioning and treated her primarily for her physical impairments with few positive objective clinical findings related to her mental disorders on examination. (T. 33-34.)

In assessing Plaintiff's mental health limitations, the ALJ afforded little weight to Dr. Azad's opinion noting Plaintiff's restrictions in dealing with people due in part to bipolar disorder; being prone to excessive anger; pain constantly being severe enough to interfere with attention, concentration, and sleep; and significant off-task behavior and excessive absences. (T. 34, 503-04.) The ALJ similarly afforded little weight to Ms. McLearn's assessment indicating limitations including, but not limited to, marked impairment in dealing with work stress, up to 40 percent off-task behavior, and three absences from work per month. (T. 34, 585-91.) The ALJ indicated that significant

24

absences and off-task behavior were speculative, particularly because Plaintiff did "not have a history of multiple cancelled medical appointments to indicate difficulty attending to a routine or maintaining a schedule." (T. 34, 36.)  The ALJ concluded that the limitations appeared to be based primarily on Plaintiff's subjective self-reports of symptoms and functional limitations inconsistent with the evidence including Plaintiff's "overall positive response to mental health treatment, her inconsistent statements about the severity of her symptoms, and her engagement in a range of activities consistent with unskilled work." (*Id*.)

The ALJ also indicated that Ms. McLearn's assessment could not be afforded controlling weight because she was not an acceptable medical source under the Federal regulations.  (T. 36.)  The ALJ stated that the medical opinions or GAF scores from Dr. Azad, Dr. Calkins, and Dr. Gorelik were "not entitled to controlling weight because few positive objective clinical findings related to [Plaintiff's] mental disorders [were] noted by Drs. Azad, Calkins, and Gorelik based on mental status exams performed since the date first insured." (*Id*.)  The ALJ also noted that Dr. McCormick and Consultant Kleinerman's opinions were entitled to greater weight since they were more consistent with the record in its entirety including Plaintiff's overall positive response to ongoing mental health treatment and her engagement in a range of activities of daily living that require good mental functioning.  (T. 36-37.)  The ALJ further noted that Dr. McCormick did not specifically define the terms "moderate to marked" or "moderately" but concluded that there was nothing particularly vague about this opinion requiring clarification.  (T. 37.)

25

### 3. Analysis

First, Plaintiff argues that the ALJ erred in giving great weight to Dr. Fkiaras' opinion because (1) it was issued prior to her fibromyalgia diagnosis, (2) Dr. Fkiaras only conducted one brief examination of Plaintiff, (3) Dr. Fkiaras did not review any medical records or treat Plaintiff, (4) Dr. Fkiaras' findings are inconsistent with the longitudinal medical evidence, and (5) there is no suggestion that Dr. Fkiaras has a relevant specialty.  (Dkt. No. 9, at 16-19.)  However, as discussed above in Section III.A. of this Decision and Order, the ALJ's analysis of Plaintiff's allegations of fibromyalgia is evidenced by her careful consideration of the evidence of record -- including the medical opinions -- and the Court finds this analysis is supported by substantial evidence.  (T. 16-37.)  Although Dr. Fkiaras' opinion pre-dates Plaintiff's fibromyalgia diagnosis, the opinion still useful to the ALJ in determining Plaintiff's physical RFC, particularly in light of Plaintiff's indication that fibromyalgia was a misdiagnosis.  (T. 24-25, 55, 57-58, 433-38, 820, 890.)  The ALJ was entitled to rely on an opinion from an examining medical consultant because he is considered a qualified expert in the field of social security disability.  *See Frye*, 485 F. App'x at 487; *Little*, 2015 WL 1399586, at *9.  Further, there is no legal requirement that opinion sources have access to the complete record.  *See Stottlar v. Colvin*, 15-CV-0340 (GTS), 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon'"); *see also* 20 C.F.R. § 404.1519n(c) (which does not indicate that reviewing a claimant's medical records is a

requirement for a complete consultative examination).  The Court therefore finds that the ALJ did not err in affording great weight to the consultative examiner's opinion.

The Court also finds the ALJ's explanation of the great weight afforded to Dr. Fkiaras' opinion supports her analysis.  (T. 24-25.)  Specifically, the ALJ indicated she did not adopt all of the limitations that Dr. Fkiaras identified, but that the opinion was "generally supported by the objective medical evidence that indicates that [Plaintiff] is precluded from performing very heavy, heavy, medium, and light work activity due to the combination of physical impairments, but otherwise retains the maximum [RFC] to perform a range of sedentary work activity."  The ALJ further explained that

> the postural limitations identified by Dr. Fkiaras for the need to avoid squatting and crouching with moderate limitation in bending are reflected in the [RFC] for no crouching (squatting or bending at the legs and spine) and for stooping (bending at the waist) on no more than an occasional basis that is defined as occurring from very little up to one-third of the time.  The additional postural and manipulative limitations identified by Dr. Fkiaras are supported in part by the objective medical evidence and [Plaintiff's] ongoing treatment for a combination of physical impairments affecting her spine and extremities.  However, greater exertional and non-exertional limitations are not supported by the objective clinical and laboratory findings from various medical sources.

(T. 25.)  Further, the ALJ was not required to adhere to the entirety of Dr. Fkiaras' opinion (or any other medical source's opinion) in formulating Plaintiff's RFC.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v.*

*Colvin*, 12-CV-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Second, the Court is not persuaded by Plaintiff's argument that the ALJ erred in concluding she did not have a duty to recontact Dr. Fkiaras regarding his use of the terms "moderate" or "mild to moderate."  (Dkt. No. 9, at 18-19.)   In her decision, the ALJ indicated that she did not have a duty to recontact Dr. Fkiaras to clarify the basis of the opinion before weighing the medical opinions because, although Dr. Fkiaras did not specifically define the terms "moderate" or "mild to moderate," there was "nothing particularly vague about this medical opinion that would require clarification given the few chronically positive objective clinical findings noted on accompanying physical exam conducted by Dr. Fkiaras that are generally consistent with similar exams noted by various other treating and examining sources."  (T. 30-31.)  Indeed, the Court's review indicates the ALJ fully considered this opinion along with the other evidence of record to determine that Plaintiff retains the RFC to perform a modified range of sedentary work. (T. 20-37.)  Further, the ALJ admittedly did not fully adopt Dr. Fkiaras' opinion and gave partial weight to Dr. Calkins' assessment and little weight to the other opinions of record to determine Plaintiff's physical RFC.  (T. 26-31.)

Third, Plaintiff argues that the ALJ erred in weighing the opinions of her treating providers who considered the combined limitations caused by Plaintiff's fibromyalgia and other impairments.  (Dkt. No. 9, at 19-22.)  However, the Court finds that the ALJ's RFC analysis indicates careful consideration of these opinions as summarized above,

28

and it does not indicate a violation of the treating physician rule requiring remand.  (T. 20-37.)  Indeed, the ALJ explained the weight given to each of the treating opinions and why the assessments of Ms. McLearn, Ms. Bozuhoski, Ms. Pranovilla, Dr. Azad, and Dr. Calkins could not be afforded controlling weight.  (T. 26-37.)  The ALJ's detailed analysis here is reflective of her responsibility to review all the evidence before her, resolve inconsistencies, and make a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such.").

Finally, the Court is similarly unpersuaded by Plaintiff's contentions that the ALJ failed to properly assess Plaintiff's ability to stay on task and/or maintain attendance and substituted her judgment for undisputed medical opinions.  (Dkt. No. 9, at 22-24.)  In determining Plaintiff's physical and mental limitations, the ALJ indicated that the record did "not support frequent unscheduled breaks, excessive absenteeism and tardiness, or other significant off-task behavior in a work-setting secondary to [Plaintiff's] physical impairments" and that she "has no more than moderate difficulties in understanding, remembering, or applying information; and no more than moderate difficulties in concentrating, persisting, or maintaining pace."  (T. 30, 36.)  The ALJ explained that Plaintiff has been able to perform a range of activities and her alleged off-task behavior

due to pain and side effects of medication was not supported by various exams showing she was awake/alert and in no acute distress or her ability to attend appointments, the two consultative examinations, the disability hearing, and routine follow-up appointments despite periodic gaps in treatment or other cancelled medical appointments.  (T. 30, 36, 216-29, 197-204.)  The ALJ also indicated that Plaintiff's allegations of mental limitations appeared overstated with her complaints of physical pain, fatigue, and other symptoms related to her physical impairments being under good control with conservative treatment and avoidance of more than sedentary level of exertion.  (T. 36.)

The Court finds that, in addition to carefully reviewing the evidence of record, the ALJ properly weighed the medical opinions of record relating to Plaintiff's mental limitations.  (T. 31-37, 90, 101, 93-95, 104-06, 439-43, 449, 503-04, 585-91, 889.)  For example, the ALJ afforded great weight to Dr. McCormick's opinion but did not adopt all of the findings therein (including significant limits in maintaining a schedule), noting that "repeat mental status examinations showed that [Plaintiff] generally presents with changes in mood or affect consistent with the presence of a medically determinable severe mental disorder, but few other chronically positive clinical findings are noted to support greater limitations of functioning."  (T. 31-32, 384, 439-44, 447, 466, 606, 612, 615, 629, 742, 890-91, 894, 896.)  The Court's review of the record supports these conclusions by the ALJ regarding Plaintiff's mental limitations and indicates that Plaintiff has not established further limitations regarding off-task time, work pace, or attendance than those included by the ALJ in the RFC.

For the reasons above, the Court finds the ALJ's analysis of Plaintiff's RFC and the medical opinions is supported by substantial evidence.  Accordingly, remand is not warranted.

## C. Step Five Determination

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. July 7, 2009) (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

At Step Five, the ALJ found, based on the vocational expert's testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy.  (T. 38-40, 74-76.)  Plaintiff argues the Step Five determination is not

supported by substantial evidence because the RFC and vocational expert testimony was based on a hypothetical question which did not properly account for the true extent of Plaintiff's exertional and non-exertional impairments.  (Dkt. No. 9, at 24-25.) However, as indicated above, the Court finds that the ALJ's analysis of Plaintiff's impairments, RFC, and the opinion evidence is supported by substantial evidence and that the hypothetical question proposed to the vocational expert properly reflected the RFC limitations.  (T. 20, 74-76.)  Plaintiff has not established further limitations than those included in the RFC.  Accordingly, the Court finds the ALJ's Step Five determination is supported by substantial evidence; therefore, remand is not warranted on this ground.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint is **DISMISSED**.  **IT IS SO ORDERED.**

Dated: April 23, 2020
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge